The court first overruled the plea in bar; and after-wards
chancellor Mathews
delivered the decree of the *297 coui't as follows: — >As this is a case of considerable importance tlie court would have taken longer time to consider it, had there been any difficulty in our minds with respect to the decision, we ought to give; but as we think it a very plain case, when stripped of all the extraneous matter that has been introduced, in tlie course of the arguments on it, we are as well prepared now as we should be at any future day to decide on it. The most important point in the case is, whether the purchase by Mr. McKenzie, of tlie land in question, and tlie titles from the Sheriff to him, vests in him such a right, as he cannot now be divested of. If the purchase was a fair bonafide and unconditional one, it then could admit of no doubt, because the titles are so drawn as to vest an absolute estate in M‘Kenzic, of the whole interest that was in Denton. The court must therefore proceed with great caution, when they are called on to divest a man of such a right; especially too, when the evidence offered for this' purpose, is one article in an account rendered fey defendant to complainant charging him with the purchase money for the land, and this is to be corroborated by parol testimony. With regard to the first point: The-words of the statute of frauds arc ie That no action shall be brought whereby to charge any person on any contract oi’ sale of lands, or any interest therein, unless the agreement on which such action shall be brought, or some'memorandum or note thereof shall be in writing, and signed by the party to be charged therewith/’ &c. Is the account then, signed and delivered by defendant, in which he has charged the complainant with the consideration money for the purchase of the land, such a memorandum or note in writing, signed by the party to be charged therewith, as will take this case out of the statute, and let the complainant into a full investigation of the whole transaction relative to the purchase by defendant? "Wo -have already by overruling the pica in bar, determined that the article in the account above mentioned, ought ie he considered as s„ich a note, as is sufficient to comply with the true intent and spirit of the law, which is meant to prevent, and not to protect fraud» This diffiorlty be *298 ing removed, and the case standing on its intrinsic merits, we are next to consider, whether the parol evidence which has been admitted in corroboration of the written Evidence amounts to such a proof of an intended trust on the paid; of defendant for the benefit of complainant, as this court will enforce the execution of, notwithstanding the absolute conveyance to the defendant. The complainant by his bill expressly charges that such was the intention at the time of the sale. The defendant by his answer positively denies it; recourse must then be had to the evidence to see whether it is sufficient to invalidate the answer of defendant. That such was the intention of the parties originally, is strongly evinced by the charge made by defendant in his account against complainant. If it was not so, why charge him with the money, which if the purchase was on his own account, unconnected with complainant ought to have been paid by himself, and in which the complainant could have had no interest or concern ? But it was said the defendant was ultimately obliged to pay the money; and that the part that is said to have been paid by complainant was not on account of the purchase of the land, but for a debt then owing by com - plainant to defendant. But Kennedy swears that he received 101. of the purchase money from complainant which is a strong circumstance that the purchase was not made by defendant on his own account. Yet lie charges complainant with the whole purchase money, and even the liquor drank at the sale, or at some other time, when the land was to have been sold. That he was obliged afterwards to pay the purchase money will not alter the nature of the original purchase, because defendant liad his remedy against complainant to compel him to a reimbursement; and his lien on the" land was such as he could not have been ousted of, until he had been satisfied for his debt out of it. We will now take a view of the parol evidence. Mr. Kennedy who may he said to have been the vendor, swears, that he told complainant previ- ■ ous to the sale, that if he could get any friend to purchase the land for him, so as it was bid up to the amount of debt and costs on the execution on which it was sold ho •would *299 require no more. That it was accordingly bid off barely tor the debt and costs by the defendant whom he con-sideral as the confidential friend of complainant; and considered it as purchased by him for complainant. The next witness Mr. Parker, swears that he attended at the sale, as the friend of his brother, at whose suit the land was sold, and agreed also to the terms proposed by Kennedy to complainant; and that he was the next highest bidder to defendant, to whom it was knocked off; and that he considered the purchase to be on complainant’s account. The next witness Mr. Grant, swears defendant desired him to purchase the land at the sale: he did not positively say for whom; but he understood that had ho bought it, it was to have been on account of complainant. The next witness Mr. Cudworth, swears defendant told him he had complainant’s property, meaning that in question, so much at his command, that lie might do what lie pleased with it, but that he was not so great a villain as to take such an advantage of him; he would give it up to him. Here is a long train of violent presumptive evidence, that the purchase was made by defendant for account and use of complainant: but that of Cudworth goes further; to him the defendant acknowledges the property to he complainant’s and that he was not villain enough to defraud him of it. AYe do not consider the rules of evidence to go so great lengths as has been contended for? that is, that there must be two positive witnesses to contradict a fact denied by defendant in his answer: AYe think the rule is not so strict; but that if there is one positive witness and strong circumstantial evidence, amounting to violent presumption, especially in a case like the, present, it is sufficient to destroy the testimony of defendant’s answer. In one particular it is pointedly contra. dieted by two witnesses. He says it was at the first salo that the lease for ten years was produced by him: but Kennedy and another declared it was at the second; and we think if ever there was a case in which this court ought to be induced to give the most liberal construction to the above rule, it is in the present case, otherwise justice would become a mero ignus fatuas, it might he sought *300 after, but would never be substantially obtained, What is the conduct of the defendant on the present occasion? After every appearance of an intention of purchasing a valuable property of another person, in order to befriend that person, and the company present at the sale being impressed with such an idea, decline bidding on the ostensible Mend of an unfortunate man, that he might get back his property at the easiest possible rate: That when he has so possessed himself of it, at a twelfth part of its real worth (as Neilson says he offered 600k for it and they asked 1200k) got the titles in his own name, in order to vest the property absolutely in himself, and now sets up this title to secure the same to himself and endea-vour to, shield himself under a statute intended to prevent such nefarious practices, is such a degree of hardiness, and such an attempt to pervert the true scope and beneficial effects of that law, as must ever receive the frowns of this court. Wo have been induced to admit evidence in this case, that in many others we must have rejected; And why? Because (we are sorry we are obliged to say so) there is such a badge of fraud imprinted on the very front of this transaction, as called loudly on us to give the latitude to the evidence produced on this occasion, which wre now do; for if we should not, true justice could not be come at. It is an observation that has been frequently made, that the rules of evidence at law, and in this court are the same. There was a time in which this observation would have applied, but we well know that even so long ago as the time of lord Harcourt, and since him that great luminary of the law of equity lord Hard-wicke, who was the first chancellor that reduced the principles of this court to a regular system, for the furtherance of justice, was obliged to declare, and so declaring to determine, that although at law fraud must he proved, yet in this court it will be presumed; and on this principle has this court ever since acted. If then fraud might he here presumed, how well warranted are we in saying, that in this case it is not only to be presumed from most part of the evidence before us, hut from some parts it has also been proved. Lord Harcourt goe3 still *301 farther, and says either suppress» veri or suggest» falsi is each, of them a good reason to set aside any deed or conveyance. In the present case both of these reasons strongly apply; for here there is a suppress» veri, in the defendant’s attempting to conceal the purposes for which the purchase was made. There is also suggest» falsi, because his answer is positive that it was on his own account and no other that the purchase was made; both of which are contradicted by sufficient evidence. It is also well known to be laid down in many ol* the books, that this court will lay hold of almost any circumstance to prevent a fraud, so odious is every approach of such conduct viewed here.
The case of Olipliant and Singleton has been quoted, but we do not think it any ways analagous to the principal case, for in that there was not the least suggestion of fraud. The case of Dalzel vs. Timi-od, was where a deed of conveyance was made to Catharine MTnfuss; and parol evidence was brought to prove that the intention of the donor was to convey to Catharine MTufuss the elder; hut the donor being a minor and there not being the least appearauce of overreaching or fraud attempted, the donor too being dead, we thought it too much to set aside so solemn a deed on this parol evidence: That it was intended to one person, but by mistake was made in the name of another. As to the deed of the 5th of August, 1788, purporting to be a sale of complainant's lease for ten years to defendant of the premises in question, as little or no notice has been taken of it by the counsel in argument, but the whole stress has been laid on the Sheriff’s titles, it is unnecessary for us to say anymore on it, than that had the creditors of the complainant been before this court, to pray relief against this deed, we should then have thought it necessary to give some opinion on it; but as things are, let it sleep till called for, if any one should think it worth while to do so. From a full view and deep consideration of the whole case, we are of opinion that the attempt now made by the defendant to reserve to himself the absolute property in the land in question, deserves no other epithet than that of *302 a gross fraud and imposition on a too credulous man; and were we to pursue the rigid rules of this court, we would make no other decree than a conveyance of the land to the complainant, and leave the defendant to his remedy at law for any demands he may have against the complainant: but as we do not consider complainant as blameless in some other parts of the transaction, we will proceed to consider the other pai'ts of the pleadings and evidence before us. ' The defendant’s account shews that there has been considerable dealings between him and complainant, and there appears to be a large balance due him on that account; so does his answer. The evidence of Grant and Cudworth also proves that the objection on the part of defendant to restore the complainant’s property, was that he might be indemnified out of it for what complainant owed him. We will not therefore deprive him of his lien on the property; hut let the accounts be referred to the master to enquire into and finally adjust and settle the same, and report accordingly. That the defendant in the mean time hold the land as a security for what might be found due to him, but as a trustee only for complainant until the further order of this court; and to enable the master more readily to adjust the accounts, we direct him to allow complainant the rent agreed for by the lease of the 8th of August, 1788, for the time therein specified.